UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

YOLANDA WILLIAMS,

                Plaintiff,

v.

AUTOZONE STORES, INC., et al.,

                Defendants.

Action No. 3:09–CV–255

OPINION

THIS MATTER is before the Court on defendant Willie Pugh's Partial Motion to Dismiss plaintiff Yolanda Williams' Complaint. (Doc. No. 20.) Pugh contends that Williams' claim of tortious interference must be dismissed because under Virginia law an agent cannot interfere with a principal's contract. (Pugh's Mem. of Law., 3.) For the reasons set forth below, the Motion is denied.

I.  STATEMENT OF FACTS

In resolving this Motion, the Court shall accept as true all well pleaded allegations of fact in the Complaint and credit Plaintiff's legal conclusions to the extent they are rendered plausible by these allegations.  See Ashcroft v. Iqbal, ___U.S.___, 129 S.Ct. 1937, 1950 (2009).

A.  FACTUAL BACKGROUND

This dispute arises out of the actions taken by defendants Autozone Stores, Inc., Autozoners, LLC, (collectively, "Autozone") and Willie Pugh ("Pugh") leading up to the

1

termination of Yolanda Williams' ("Williams") employment with Autozone. (Comp., ¶ 1.) Williams states that she was hired by Autozone on or about February 22, 2006. (Comp., ¶¶ 2, 13.) Autozone operates a number of automotive supply stores in and around Richmond, Virginia. (Comp., ¶¶ 3-9.) At all times relevant to this complaint, Pugh was an Autozone store manager in Midlothian, Virginia, and, at times, Williams' direct supervisor. (Comp., ¶ 11.)

Williams states that during her employment, she performed all of her duties satisfactorily and to Defendants' legitimate expectations. (Comp., ¶ 17.) However, Williams states that in February 2008, she was assigned to the Midlothian store managed by Pugh and that shortly thereafter he began discriminating against her on the basis of her gender. (Comp., ¶¶ 16-18.) Williams states that Pugh created a "hostile work environment" by touching her in an unwanted sexual manner, making comments regarding her appearance, and propositioning her to engage in sexual acts. (Comp., ¶ 19.) Williams states that after she asked Pugh to desist in his behavior, Pugh retaliated with verbal attacks and "wrote her up either for no reason or a false reason." (Comp., ¶¶ 20-21.) Williams states that after she reported this conduct to Autozone, the company retaliated by transferring her to another store and then firing her. (Comp., ¶¶ 22-23.)

Williams' states that Pugh's acts were "the acts of an agent, manager, and employee of Autozone that Autozone has refused to disavow or rescind and that Autozone has approved and ratified." (Comp., ¶ 12.) Pugh denies that he committed the acts alleged, but admits that at all times relevant to Williams' claims he was an agent, manager, and employee of Autozone. (Pugh's Answer, ¶ 12.) For its part, Autozone

denies that Pugh's acts were those of an agent, manager, or employee.  (Autozone's Answer, ¶ 12.)

B.  PROCEDURAL HISTORY

On June 6, 2008, Williams filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission and the Virginia Council on Human Rights.  On February 4, 2009, Williams' received a Notice of Right to Sue, and this action was filed in the Circuit Court of the City of Richmond on March 26, 2009.  Williams alleged a variety of statutory and common law claims against Autozone and Pugh, and in Count Six she alleged that "using the improper methods and wrongful means described above, Pugh willfully, maliciously, and intentionally interfered with the contract of employment between Williams and Autozone," leading to her loss of employment and other damages.  (Comp., ¶ 39.)  Autozone removed the case to this Court on April 22, 2009.  On August 14, 2009, Pugh filed the instant Motion to Dismiss.

## II. APPLICABLE LAW

A.  STANDARD OF REVIEW

Because this matter comes before the Court pursuant to its supplemental jurisdiction under 28 U.S.C. § 1331, it is bound to apply the Federal Rules of Civil Procedure and their pleading standards to the substantive elements of the claim as established by Virginia tort law.  See e.g., Maternally Yours, Inc., v. Your Maternity Shop, 234 F. 2d 538 , 540-41 n. 1 (2d Cir. 1958)(source of right determines substantive law to be applied).  To resolve Pugh's Motion, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim that is

plausible on its face." Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009).[1] A claim is "plausible" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. While the consistency of the claims within a complaint is a factor in determining its plausibility, the Federal Rules of Civil Procedure state that "no technical form is required" in a complaint and that a "party may make as many separate claims . . . as it has pleadings, regardless of consistency." Fed. R. Civ. P. 8(d).

B. TORTIOUS INTERFERENCE WITH CONTRACT UNDER VIRGINIA LAW

To establish a prima facie claim of tortious interference with contract under Virginia law, a plaintiff must plead: 1) the existence of a valid contractual relationship, 2) knowledge of that relationship on the part of the interfering party, 3) intentional interference inducing or causing a breach, and 4) damage to the party whose relationship was disrupted. See, e.g., Chavez v. Johnson, 230 Va. 112, 120 (1985)(finding cause of action exists). Where a contract is terminable at will, a plaintiff must also prove that the interfering party used "improper means or methods" to bring about termination. Maximus v. Lockheed Info. Management. Sys. Co., Inc., 254 Va. 408, 414 (1997) (less protection for at will employment). Finally, it is axiomatic that a party cannot interfere with its own contract, and that where tortious interference is alleged against an agent of the terminating party, the potential for liability "turns on whether the employee was acting outside the scope of his employment at the time the

---

[1] Contrary to the briefs of the parties, the "no set of facts" standard of Conley v. Gibson, 355 U.S. 41, 45 (1957), is not the appropriate rule against which a complaint must be measured. See Bell Atlantic v. Twombly, 550 U.S. 544, 562-63 (2007).

interference took place." See Fox v. Deese, 234 Va. 412, 427 (1987)(requiring evidentiary hearing on issue). In Virginia, an employee's acts fall within the scope of his employment when they are "expressly or impliedly directed by his employer, or [are] naturally incident to the business," and are "performed . . . with the intent to further [the] employer's interest . . . and [do] not arise wholly from some external, independent, and personal motive." See, e.g., Kennsington Assoc. v. West, 234 Va. 430, 432 (1987) (armed guard's discharge of weapon during "horseplay" not within scope of employment). Where scope of employment questions are fairly contested, the courts of Virginia treat them as issues of fact best left to the jury. See, e.g., Plummer v. Center Pyschiatrists, Ltd., 252 Va. 233, 235 (1996) (concluding, on summary judgment motion, that scope of employment issue should proceed to jury). This Court has adopted a similar approach where complaints have raised a "reasonable inference" that interfering conduct was outside the scope of employment. See, e.g., Storey v. Patient First, 207 F.Supp.2d 431, 449 (E.D.Va. 2002).

### III. DISCUSSION

In light of the forgoing, the Court must determine whether, on the basis of Williams' well pleaded allegations of fact, it is reasonable to infer that Pugh is "liable for the misconduct alleged" under Virginia law. See Iqbal, 129 S.Ct. at 1949. In his Motion, Pugh's sole attack on the sufficiency of Williams' Complaint is its failure to properly alleged that he was a third party to her contract with Autozone. (Pugh's Mem. of Law, 3.) Pugh argues that because Williams describes his acts as those of an agent of Autozone, Williams' cannot prevail on her tortious interference claim because "he and

5

Autozone are one and the same for the purposes of this tort" and thus he cannot be seen as a third party to Williams' contract of employment. (Pugh's Mem. of Law, 4.) Pugh contends variously that because he was, in fact, an agent and employee of Autozone (Pugh's Mem. of Law, 3-5) or because Williams' has alleged that he was acting as an agent and employee of Autozone (Pugh's Reply, 1-2), the Court must reach this conclusion.[2] A chain of reasoning based on either premise would be missing a link.

First, Pugh mistakes the effect of his relationship with Autozone on his potential liability to Williams. Under Virginia law three parties are essential to a claim of tortious interference. See Deese, 234 Va. at 427. However, the fact of Pugh's agency and employment relationship with Autozone does not mean that the actions alleged were those of an agent and employee of Autozone for the purposes of this claim. Id. If Pugh's actions fell outside the scope of his employment, then they were his alone and he can be held liable for them. Id. Williams' complaint, which details various types of harassment and retaliation, permits this Court to draw a reasonable inference that Pugh was acting outside the scope of his employment. (See Comp., ¶¶ 18-21.) Based on these allegations of fact, the Court can reasonably infer that the alleged conduct was not "expressly or impliedly directed" by Autozone, "or . . . naturally incident to the business," and was not "performed . . . with the intent to further [Autozone's] interest" but arose from some "wholly . . . external, independent, and personal motive." See, Kennsington Assoc., 234 Va. at 432. Similarly, it is not unreasonable to infer that this conduct was wrongful under Virginia law. See Maximus, 254 Va. at 414. The propriety of the first inference is

---

[2] Pugh does not address Autozone's denial of Williams' allegation that Pugh was acting within the scope of his agency and employment. (See Autozone's Answer, ¶ 12.)

underlined by the preference of both state and federal courts in Virginia for resolving scope of employment questions at trial. See Storey, 207 F.Supp.2d at 449; Plummer, 252 Va. at 235.

Second, Pugh mistakes the effect of Williams' statements regarding his relationship with Autozone. Williams' allegations that Pugh's actions were those of an "agent, manager, and employee of Autozone" in one portion of her Complaint do not preclude the Court from inferring that he acted outside the scope of his agency and employment in another portion of her Complaint. (Compare Comp., ¶¶ 12 & 38-39.) Rule 8(d) plainly states that a "party may make as many separate claims . . . as it has pleadings, regardless of consistency" and that "no technical form [of pleading] is required." Fed. R. Civ. P. 8(d). While this Court has said that Rule 8(d) does not allow a plaintiff to make inconsistent factual allegations, see SecureInfo Corp. v. Telos Corp., 387 F.Supp.2d 593, 617 (E.D.Va. 2005), it has confined such statements to situations where inconsistent allegations were incorporated into a single claim.[3] Here, the inconsistencies do not run so close to the heart of Williams' tortious interference theory. For example, the Court need not accept that Pugh was acting as an agent of Autozone for the purposes of satisfying one element of the tortious interference claim and at the same time accept that he was not acting as an agent of Autozone for the purposes of satisfying

---

[3]In SecureInfo Corp. the Court considered a complaint which alleged that one of the defendants had been an agent of another, yet included claims grounded in conspiracy and tortious interference. 387 F.Supp.2d at 618. In concluding that such factual tension could not be contained within one complaint, the Court specifically noted that the plaintiff had incorporated, by reference, all of his previous allegations as to agency into his claims for conspiracy and tortious interference. Id. By contrast, Count VI does not contain any such incorporation clause. (See Comp., ¶¶ 38, 39.) Instead, Williams makes reference only to "the improper methods and wrongful means described above". (Id. ¶ 38.)

another element of the claim. Since it is reasonable to infer that Pugh was acting outside the scope of his authority on the basis of his conduct alone, the absence of a specific allegation that Pugh was acting outside the scope of his agency and employment does not render Williams' tortious interference claim implausible. While it may be impossible for Williams' to prevail on all of her claims at once, this inconsistency can be resolved at a later stage of the proceedings.

## IV. CONCLUSION

After considering the filings of the parties and the underlying law, the Court holds that neither Williams' allegations regarding the nature of the relationship between Pugh and Autozone, nor her lack thereof, make an inference of wrongdoing on the part of Pugh unreasonable in light of her other allegations. Thus, the Court concludes that Count Six of Williams' Complaint is sufficiently plausible to state a claim upon which relief can be granted and that Pugh's Motion to Dismiss should be denied.

An appropriate ORDER shall ISSUE.

/s/

James R. Spencer
Chief United States District Judge

ENTERED this   12th   day of November 2009